## Dorrance Realty Corporation v. Neary-Turner Realty Company

*Jenkins, Turner & Jenkins,* for plaintiff.
*Robert J. Doran* and *William P. Brewster,* for defendant.

VALENTINE, J., December 31, 1931.—The Dorrance Realty Corporation and the Wilkes-Barre Deposit and Savings Bank are claimants of a fund arising from the sheriff's sale of real estate of the Neary-Turner Realty Company, purchased by the Dorrance Realty Corporation for the sum of $15,000. The real estate had been sold by the Dorrance Realty Corporation to the Neary-Turner Realty Company on March 6, 1928, on which date the deed conveying said property to the realty company was recorded. On the same day the Wilkes-Barre Deposit and Savings Bank entered of record a judgment against Neary-Turner Realty Company in the sum of $40,000. At the time of the purchase of the real estate, Neary-Turner Realty Company paid in cash the sum of $15,000, assumed

a first mortgage against the property, amounting to $25,000, and gave a second mortgage to the Dorrance Realty Corporation in the sum of $20,000. The sheriff's sale was conducted by virtue of an execution issued on this second mortgage. The deed to the Neary-Turner Realty Company and the mortgage for $20,000 given by it to the Dorrance Realty Corporation were recorded on March 6, 1928.

Counsel for the bank rest their contention on the provisions of the Act of April 27, 1927, P. L. 440, providing: "Any mortgage, given by purchaser to seller, for any part of the purchase money of the land so mortgaged shall have a lien from the time of delivery of said mortgage, provided the same be recorded within thirty days from the date of the mortgage;" and summarize their contention with the statement that since said act a mortgage given by the purchaser to the seller for any part of the purchase money becomes a lien from the time of its delivery, if recorded within thirty days from its date; that the mortgage of the Dorrance Realty Corporation has no greater advantage than any other mortgage would have had, but must prorate with the judgment entered the same day on which it was recorded.

We are unable to subscribe to this doctrine.

It is a general rule, from which there is little dissent, that a mortgage on land executed by the purchaser of the land contemporaneously with the acquisition of the legal title thereto, or afterwards, but as a part of the same transaction, is a purchase-money mortgage, and entitled to preference as such over all other claims or liens arising through the mortgage though they are prior in point of time; and this is true without reference to whether the mortgage was executed to the vendor or to a third person. The reason for the rule most frequently given is that, the execution of the deed and of the mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser but merely passes through his hands and, without stopping, vests in the mortgagee, and during such instantaneous passage no lien of any character can attach to the title: 19 R. C. L. 416, Sec. 196; Com. Title Ins. & T. Co., Trustee, v. Ellis, 192 Pa. 321.

The priority of the lien of a purchase-money mortgage was not disturbed by the Act of May 28, 1715, 1 Sm. Laws 94, section eight of which provided that no mortgage should be sufficient unless acknowledged and recorded "within six months after the date thereof." The Act of March 28, 1820, 7 Sm. Laws 303, provided that all mortgages should have priority according to the date of recording the same and that no mortgage given for the purchase money for the land so mortgaged should be affected by the passage of the act if the same was recorded within sixty days from its execution.

The Act of May 28, 1915, P. L. 631, required that such mortgages be recorded within thirty days from the execution thereof instead of within sixty days, as provided for by the Act of 1820. Thus the law respecting the priority of the liens of purchase-money mortgages remained unchanged except as to the limit of time.

The Act of April 27, 1927, P. L. 440, upon which counsel for the bank relies, is entitled "An act relating to the lien of mortgages and defeasible deeds in the nature of mortgages; and protecting the lien of mortgages by purchasers to sellers, if recorded within thirty days from the date of such mortgage." Section one of this act provides: "Any mortgage, given by purchaser to seller, for any part of the purchase money of the land so mortgaged, shall have a lien from the time of delivery of said mortgage, provided the same be recorded within thirty days from the date of the mortgage." This act inaptly expresses the legislative will. The difficulty arises by reason of the fact that it provides that such mort-

gage shall have a "lien" rather than a "prior lien." To adopt the construction contended for by counsel for the bank would be to destroy rather than to protect the lien of such mortgage, and we are unable to conclude that the act was designed to abrogate the prior lien of purchase-money mortgages as the same had theretofore existed. The act touches only the lien, not the estate, and does not abolish the rule that the execution of the deed and mortgage were simultaneous acts, that the title to the land did not vest in the purchaser, but merely passed through his hands and, without stopping, vested in the mortgagee, and that during such instantaneous passage no lien could attach to the title.

As expressed by Endlich in his Interpretation of Statutes, page 152, Sec. 113:

"It is in the last degree improbable that the legislature would overthrow the fundamental principles, infringe rights, or depart from the general system of the law, without expressing its intention with irresistible clearness." Nor does the fact that the Acts of 1820 and 1915 were repealed by the Act of 1927 change the situation. The repealed acts did not create the priority of lien of a purchase-money mortgage but merely regulated its exercise. It follows that the fund in question is properly distributable to the mortgage of the Dorrance Realty Corporation.

Therefore, now, December 31, 1931, it is ordered that the prothonotary pay the sum of $14,785.75 heretofore paid into court by the Sheriff of Luzerne County to the Dorrance Realty Corporation, or its counsel of record.

From Frank P. Slattery, Wilkes-Barre, Pa.